A92A0460. THE STATE v. WESTMORELAND.

(418 SE2d 822)

CARLEY, Presiding Judge.

After appellee had been indicted for possession of cocaine, he filed a pre-trial motion to suppress. The trial court conducted a hearing on appellee's motion and found the following facts: While appellee and several others were standing together in a public area, they were observed by a uniformed officer who was driving a marked patrol car. The officer had no articulable suspicion that appellee was engaged in any criminal activity. However, the officer nevertheless stopped his patrol car and, upon approaching the group, asked if appellee would consent to be searched. Appellee did not immediately consent, but asked if the officer had a search warrant. In response to this inquiry, the officer told appellee that he did not need a search warrant. Thereafter, appellee allowed a search of his person to be conducted by the officer. This search resulted in the discovery of the cocaine for which appellee was indicted. On these facts, the trial court granted appellee's motion and the State appeals.

1. The trial court based its ruling on two conclusions, the first of which was "that no articulable suspicion being present, the officer was not authorized to ask for consent to search." This is erroneous. The existence of an "articulable suspicion" is necessary to support the *non-consensual seizure* of an individual and an ensuing limited frisk for weapons. *Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). It is clear, however, that merely approaching an individual and requesting that he give his consent for a search does *not* constitute a seizure and need *not* be supported by an articulable suspicion. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, [cits.]; ask to examine the individual's identification, [cits.]; and request consent to search . . . , [cit.] — as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick,* 501 U. S. ___, ___ (111 SC 2382, 115 LE2d 389, 398) (1991).

Accordingly, the validity of a warrantless consent search is ultimately dependent upon whether the officer's conduct during the en-

counter was such as to demonstrate the effectuation of a non-consensual "seizure," not upon whether the initiation of the encounter had been authorized by the officer's possession of an "articulable suspicion." "[I]t [is] clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' [cit.], the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick,* supra at 398. "[T]he existence of an articulable suspicion would have to be shown *if* the State had been seeking to uphold the search as the non-consensual product of an initial seizure of appellee. However, the State was *not* seeking to do so. It was the State's position that the search was the consensual product of a mere verbal encounter which had involved no initial seizure of appellee and which need not have been supported by the existence of an articulable suspicion." (Emphasis in original.) *State v. Akinsonwon,* 200 Ga. App. 287-288 (407 SE2d 434) (1991). Thus, the trial court erred insofar as it predicated the grant of appellee's motion upon the lack of an "articulable suspicion" to initiate the encounter.

2. If the trial court's ruling had been based solely upon its erroneous conclusion that an articulable suspicion must exist to initiate the encounter, we would reverse and remand for the entry of a new order. See *State v. Akinsonwon,* supra. As noted, however, the trial court based its ruling upon two conclusions, the second of which was that appellee's "consent to [the] search has not been clearly demonstrated. . . . What has been demonstrated is a mere acquiescence to [the] authority that was asserted by the police officer." This demonstrates a proper focus by the trial court upon whether the encounter as conducted by the officer had constituted a non-consensual "seizure" of appellee. Accordingly, the grant of appellee's motion must be affirmed if this conclusion that appellee had not consented, but had merely acquiesced in the officer's authority is supported by the facts as found by the trial court.

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street. . . ." *Florida v. Bostick,* supra at 401-402. Here, as in *Florida v. Bostick,* supra at 396, a uniformed officer "walked up to [appellee] on the [street], asked him a few questions, and asked if [he] could search [appellee]. As we have explained, no seizure occurs when police ask questions of an individual, ask to examine the individual's identi-

fication, and request consent to search. . . . — so long as the officers do not convey a message that compliance with their requests is required. Here, the facts recited by the [trial] [c]ourt indicate that the [officer] did not point [a gun] at [appellee] or otherwise threaten him. . . ."

However, here, unlike *Florida v. Bostick,* supra at ___, the officer did not "specifically [advise appellee] that he could refuse consent." To the contrary, when appellee asked if the officer had a search warrant, the officer replied that he did not need a search warrant. Technically, this response was not totally false. The officer would need no search warrant *if* appellee gave his consent. From appellee's perspective, however, this response may not have been totally true. There being no exigent circumstances, the officer would need a search warrant unless appellee gave his consent. Appellee's testimony demonstrates that he had construed the officer's response in the coercive sense. According to appellee, he had not consented but had acquiesced in the search only because the officer had stated that he "didn't need a warrant to search."

This testimony supports the trial court's conclusion that the cocaine was the inadmissible product of a non-consensual "seizure" by the officer rather than the admissible product of appellee's consent to be searched. Although there is no requirement "that a defendant knows he has a right to refuse consent, such knowledge is one factor to be considered in assessing voluntariness. [Cit.] . . . When evidence exists to show . . . that a defendant believed he must consent[,] such evidence weighs heavily against a finding that consent was voluntarily given. And when that belief stems directly from misrepresentations by government agents, however innocently made, we deem the consent even more questionable. *United States v. Molt,* 589 F2d 1247, 1251-1252 (5) (3d Cir. 1978). Accordingly, the trial court's grant of appellee's motion to suppress must be affirmed.

*Judgment affirmed. Pope and Johnson, JJ., concur.*

DECIDED MAY 21, 1992.

*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney,* for appellant.

*Bobby E. Farmer,* for appellee.